## Case No. 10,431.

### ODIORNE v. DENNEY.

[3 Ban. & A. 287;[1] 1 N. J. Law J. 183; 13 O. G. 965.]

Circuit Court, D. New Jersey. May, 1878.

PATENTS—EQUIVALENTS—NOVELTY—PRIOR PATENT.

1. Though the defendant's machine be more simple, cheaper, and possibly better than the

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

complainant's patented machine, yet if its chief efficiency arises from the use of equivalents to the complainant's patent, it is infringement.

2. A prior patent of which no notice has been given will not be considered as bearing on the question of novelty.

3. Letters patent No. 149,480, dated April 7th, 1874, granted to John C. Hurcombe, for an improvement in machines for fixing metallic rings to umbrella-cases, held to be valid.

[This was a bill in equity by David W. Odiorne against John G. Denney.]

B. F. Lee and F. C. Bowman, for complainant.

Amos G. Hull and R. J. Gwillem, for defendant.

NIXON, District Judge. The bill is filed in this case for an injunction, profits and damages against the defendant, for infringing certain letters patent No. 149,480, and dated April 7th, 1874, for an "improvement in machines for fixing metallic rings to umbrella-cases," originally granted to John C. Hurcombe, and by him assigned to the complainant. The answer of the defendant denies the infringement, and justifies under letters patent No. 182,913, dated October 3d, 1876, and issued to one Robert J. Gemmill, for improvement in apparatus for attaching rings to umbrella-cases. It contains some general allegations, in paragraph 111, that Hurcombe was not the original and first inventor of any material or substantial part of the thing patented and described in the bill of complaint, and that the same has been in public use or on sale in this country for more than two years before his application for a patent. But as no notice was given to the complainant of any special matters to be proved in support of such general allegations, I shall pass at once to the only issue raised in the pleadings.

The complainant's patent is for a machine to be employed in the manufacture of umbrella cases. It embraces mechanism not new in itself, but never before combined in the same manner, or applied to the specific object for which it was designed. Umbrella-cases were usually made of enamelled cloth, and, before the invention described in the patent of the complainant, much difficulty and loss were experienced in their manufacture. The two longitudinal side edges were sewed together inside out. A grooved metallic ring was inserted in the smaller end of the case, and a string was tied around the cloth, pressing it into the groove, so as to attach the end of the case to the ring. It was then necessary to turn the case, and this was accomplished by pressing it over an umbrella, or over a stick of the general shape of an umbrella, and stripping it down from the top or larger end. Sometimes the turning was effected by using a pair of sticks —the case being peeled off one stick onto the other, after the ring had been attached in the mode above described. These processes,

however, were slow and comparatively costly— there being a great loss of material from the breaking and cracking of the enamel on the cloth, which could only be avoided by the application of heat to the case when turned. In this state of the art, Hurcombe invented and patented the machine now owned by the complainant. He had two objects in view: (1) To fasten the ring to the umbrella-case more expeditiously and securely than by the old method of tying; (2) to warm the post on which the case was placed inside out, in order to attach the ring, so that the case could be stripped off and turned without delay, and without loss by the cracking and chipping of the enamelled cloth. In the specifications of his patent he describes his invention as follows: "My invention consists, broadly, of a machine for clasping metallic ring-binders to the ends of umbrella-cases and to the ends of the gores of umbrella-covers, so as to confine the fabric between the edges of the metal binder; such machine consisting of an anvil carrying a spring or yielding poppet-holder for the metal binder, and mounted upon a hollow heating-post, so as to retain and present the binder to the action of a clasping-hammer, the heating-post serving to heat and hold the article while being united with the binder, and the spring poppet-holder performing the function of securing the clasped binder upon the anvil, to hold it in position to allow the umbrella-case to be turned right side out in effecting its removal in a heated condition from the post, while such machine combines in its construction a tubular standard connecting with the holding-post and a suitable heater, through which the anvil-post and the standard heated water is made to circulate. The object of such heating apparatus, in connection with the case-holder, is to allow the case to be withdrawn from the anvil post without danger of cracking, defacing, or tearing the glazed case, as would result from its removal in a cold condition." After describing the drawings which accompany the specifications, he then makes eight claims, with none of which we have anything to do in the present case except the fifth, which, complainant alleges, the defendant's machine infringes. The claim is: "In a machine for clasping the metal binders to umbrella covers and cases, a hollow heated post or holder, E, for the umbrella-case, for the purpose stated." The purpose is clearly stated in the specifications, and to these we are entitled to look for the construction of the claim. Thus interpreting it, I am inclined to hold, in accordance with the views of the counsel for the complainant, that the essence of the invention is the use of an iron anvil-post heated at its surface, which comes in contact with the glazed surface of the cloth, thereby softening it at the moment the ring is being clasped to the cloth at the top of the anvil-post, so that it can at once be stripped from the post, and turned right side out as

soon as the ring has been compressed and secured by the hammer.

The sole question presented by the pleadings and evidence is: Does the defendant's machine infringe the complainant's? His patent was taken out to accomplish the same results that were attempted in the Hurcombe invention. He calls it "an improvement in apparatus for attaching rings to umbrella-cases." He states that: "The object of his invention is to provide a simple and efficient machine for expeditiously attaching grooved metallic binding-rings to the ends of umbrella-cases and the gores of umbrella-covers, and to allow of the umbrella-case, clamped at its ends by the binding-ring, being turned right side out and removed from its holding-post without tearing or cracking the material of which said case is composed." He substitutes for the hollow, fixed, internally heated iron post of the complainant's patent a solid removable and externally heated iron post, over which the umbrella-case, having been drawn inside out, is drawn or passed. The metallic ring, which is to be affixed to the smaller end of the umbrella-case, is fitted over the end of the anvil-post, and then, instead of bringing down the hammer upon the post, he raises up the post by means of a treadle until it strikes an immovable case having a hollow, into which the top of the post enters, whereby the clasping of the ring to the umbrella-case is effected.

In the two machines there are a number of variations in the details of mechanical construction. But it seems to me that Gemmill has seized the principle of the complainant's patent and its mode of operation, and has studiously sought, by varying the instrumentalities, to avoid the charge of infringement. The language of the late Justice McLean, in Pitts v. Edmonds [Case No. 11,-191], is pertinent here: "A patent, in calling for a specific mode, embraces in law all mechanical equivalents, or modes which operate on the same principle; consequently all modes, however changed in form, but which act substantially on the same principle, and effect the same end, are within the patent. If this were not so, a patent right would be of no value, as it might be avoided by any one who possessed ordinary mechanical skill." The defendant's machine is more simple, cheaper, and possibly better. But its chief efficiency arises from the use of equivalents to the complainant's patent, and the law does not allow even so meritorious a class of men as inventors to appropriate the property of other people to their own use without making satisfactory compensation, or, at least, acknowledging their obligations. The defendant has exhibited in his case a patent granted to one Shadrick H. Pierce in 1868, and his counsel on the argument laid much stress upon its specifications, claiming that they anticipated all the most valuable parts of the Hurcombe patent. But I have given no attention to it in consid-

ering this case, for the reason that the defendant is not allowed to surprise the patentee by evidence of a prior invention of which he has given no notice. See O'Reilly v. Morse, 15 How. [56 U. S.] 110.

I have been inclined to give a benign construction to the complainant's patent, not only because the court should not hasten to deprive patentees of the advantages of a real and meritorious invention on account of the awkward and clumsy manner in which their claims are stated, but also because the evidence strongly suggests, if it does not lead to the conviction, that the defence is a combination on the part of the defendant and his son-in-law, Gemmill, and the inventor, Hurcombe, to deprive the complainant, who has bought and paid liberally for the Hurcombe patent, from enjoying the fruits of his purchase.

Let a decree be entered for an injunction and an account.